IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION                                                                PLAINTIFF

v.                                    Case No. 4:21-cv-4061

TEXAR TREE & TIMBER, LLC
d/b/a TEXAR LINE CLEARANCE                                                            DEFENDANT

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 27. Plaintiff has responded to the motion. ECF No. 33. Defendant has filed a reply. ECF No. 38. The Court finds this matter ripe for consideration.

### I. BACKGROUND

Texar Line Clearance ("Texar") clears the right of way for power lines by removing trees and other vegetation. John and Fallon Scoggins own Texar, and Texar does business in Texas, Arkansas, and Oklahoma. Texar owns and operates expensive and dangerous equipment, such as bucket trucks, Jaraffs[1], tractors with Brown Tree Cutter, and mulchers. According to Texar, it takes between one to two years to properly train an inexperienced worker to become a bucket truck operator.

Texar's hiring practices are unwritten and not entirely clear. Generally, John Scoggins or Fallon Scoggins makes the final hiring decisions based on recommendations from the general foremen located in the different geographic areas. In a discovery response, Texar admitted that

---

[1] A Jaraff is a brand of tree trimming equipment that has a large circular saw blade on the end of a boom that extends roughly 75 feet.

the Scoggins make the hiring decisions; however, John Scoggins stated in his deposition that the general foremen made the hiring decisions, including position and pay. It appears that the Scoggins hire whomever a foreman recommends, without giving much thought to the decision. In other words, the Scoggins defer to the judgment of the general foremen when hiring. Texar has a range of pay for its various positions, and John Scoggins testified that the general foremen determine the starting pay within that range.

Texar hires for the following field positions: chip hands/ground hands (laborer), Jarraff operator, bucket truck operator, tractor/brown tree cutter operator, mulcher operator, and climber. Texar maintains that its starting pay is based on previous experience and that geographic location can also influence the starting pay.

In 2019 and 2020, Texar hired the following people, who are all African American claimants in this case: Anthony Willis, Daniel Carter, Carlos Dudley, Gregory Briscoe, Marquis Richardson, and Dequavian Person. In June 2019, Texar hired Anthony Willis as a chip hand[2] at $13.00 per hour in Texarkana, Arkansas. The top pay for a chip hand was $13.00 per hour. A Texar foreman, Kiel McWilliams, knew Willis and recruited him to work for Texar. McWilliams told Willis that he did not need to complete the previous employment section of the application, and Willis did not indicate a position for which he was applying. Prior to working at Texar, Willis had worked as a temporary employee at Red River Army Depot driving a forklift and a SkyTrak[3], moving pallets around a warehouse and supply yard. His job at Red River Army Depot lasted about six months. Willis also worked as a pipefitter and delivered medical supplies. Willis had no prior experience operating a bucket truck, Jaraff, tractor with Brown Tree Cutter, or mulcher.

---

[2] A chip hand picks up limbs and puts them in the chipper that blows the chips into the back of a box truck.
[3] A SkyTrak is a four-wheel drive forklift.

Willis worked in the chip hand position until March 4, 2020.

In July 2019, McWilliams hired Daniel Carter. Carter and Willis were cousins. Carter's application reflected that he was applying for any position, and he was hired as a chip hand at $12.75 per hour. Upon hire, Carter possessed experience operating and servicing a forklift. Carter had trained on a SkyTrak, but he was not an operator. He also had some training on a farm tractor and a bush hog.

In October 2019, Texar hired Carlos Dudley. Dudley was friends with Willis and Carter. Dudley did not apply for a specific position, and he was hired as a chip hand at $10.00 per hour, which was the lowest rate of chip hand/laborer pay. Upon hire, Dudley had five years of experience working for a residential tree trimming company. He had some experience as a climber. Dudley had no prior experience working on a bucket truck or operating other heavy equipment that was used at Texar. Dudley worked in the chip hand position at Texar until March 4, 2020.

In June 2019, Texar hired Gregory Briscoe as a climber at $14.00 per hour. He worked for a month and then left Texar. Texar hired Briscoe again in July 2020 as a climber at $16.00 per hour. Again, Briscoe worked for a month and then left. Briscoe had applied for a climber or bucket operator position. Prior to Texar, Briscoe had worked as a trimmer, climber, grounds man, and foreman at Asplundh Tree Expert, LLC, another tree clearing business. Both John Scoggins and McWilliams testified that they were aware of personnel issues that Briscoe had while at Asplundh. McWilliams had supervised Briscoe when they both worked at Asplundh, and he opined that Briscoe did not have the best work ethic and could be difficult to work with. According to McWilliams, he hired Briscoe with the understanding that Briscoe would have the opportunity to move up in position and pay if he could demonstrate that he would not exhibit the same problems

as he exhibited at Asplundh.

In September 2019, Texar hired Marquis Richardson as a chip hand at $10.00 per hour. Richardson was friends with Willis, who introduced him to Texar. When Texar hired Richardson, he had no experience in the tree clearance industry or operating the heavy equipment used at Texar. His application indicated he applied for any position.

In June 2020, Texar hired DeQuavian Person as a chip hand at $11.00 per hour, and he is still employed by Texar. Person did not list any prior experience on his application, and his application does not indicate a position for which he was applying. Person had no prior experience in tree clearance and did not know how to operate a chainsaw when he was hired.

In 2020, Texar hired about twenty-three Hispanic laborers. Jimmy Garret, a Texar general foreman, recommended for hire twelve Hispanic laborers to work in the Oklahoma region. To recruit employees into the Oklahoma jobs, Texar typically offered higher starting wages because jobs regularly required the employees to stay overnight, away from home.

On September 24, 2021, the Equal Employment Opportunity Commission ("EEOC") filed its complaint, alleging that Texar violated Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991 by discriminating against the claimants because of their race. The EEOC seeks relief for the following claimants: Anthony Willis, Daniel Carter, Carlos Dudley, Gregory Briscoe, Marquis Richardson, and DeQuavian Person. The EEOC contends that Texar favored Hispanic applicants over African American applicants and placed the Hispanic applicants into higher paying positions at hire and/or paid the Hispanic applicants higher starting wages as compared to similarly situated experienced African American applicants.

In the instant motion (ECF No. 27), Texar argues that it is entitled to summary judgment on all claims. The EEOC disagrees.

## II. LEGAL STANDARD

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quotation omitted). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252. "There is no genuine issue of material fact when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Zimmerli v. City of Kansas City, Missouri*, 996 F.3d 857, 862-63 (8th Cir. 2021) (quotation omitted).

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). "The party moving for summary judgment generally has the burden of demonstrating the absence of any genuine issues of material fact." *Zimmerli*, 996 F.3d at 863. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## III. DISCUSSION

The EEOC asserts race discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991. The EEOC's claims fall into two categories: (1) disparate treatment based on position steering; and (2) disparate treatment based on starting wage rates. After discussing the legal framework regarding these claims, the Court will address each category in turn.

The EEOC can survive Texar's summary judgment motion by offering "direct evidence of discrimination." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011). If the EEOC "lacks evidence that clearly points to the presence of an illegal motive, [it] must avoid summary judgment by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.*

The parties appear to agree that the EEOC does not have direct evidence of discrimination.[4] Thus, the EEOC must prove intentional discrimination under the *McDonnell Douglas* framework. Under this familiar three-part burden-shifting framework, the EEOC bears the initial burden of establishing a *prima facie* case of race discrimination. *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007).

To establish a *prima facie* case of race discrimination under the *McDonnell Douglas* analysis, the EEOC must show that: (1) the claimants were members of a protected class; (2) they were meeting their employer's legitimate job expectations; (3) they have suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently). *Gibson v. Am. Greetings Corp.*, 670 F.3d 844-55 (8th Cir. 2012) (internal quotation and citation omitted). Courts, however, adjust these elements based on the context of the specific claims.

If the EEOC establishes a *prima facie* case, the burden then shifts to Texar to articulate a legitimate, non-discriminatory reason for their actions. *Cronquist v. City of Minneapolis*, 237 F.3d 920, 924 (8th Cir. 2001). If Texar articulates such a reason, the EEOC must demonstrate by a

---

[4] "Direct evidence is evidence that establishes 'a specific link between the discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 933 (8th Cir. 2006) (quoting *Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)).

preponderance of the evidence that the stated non-discriminatory reason was a mere pretext for discrimination. *Id.*

### A. Disparate Treatment Based on Position Steering

The EEOC contends that, at hire, Texar steered less qualified Hispanic applicants into higher paying skilled operator positions and steered equally qualified African American applicants into lessor paying laborer positions. The EEOC asserts steering claims on behalf of Willis, Carter, Briscoe, and Dudley.

#### 1. *Prima Facie* Case

Both parties argue that the elements of a failure to hire claim are analogous to the steering claim in this case, and they urge the Court to apply these elements to the facts at issue. To prove a failure to hire claim, the EEOC must show: "(1) [each claimant] is in a protected class; (2) he was qualified for an open position; (3) he was denied that position; and (4) [Texar] filled the position with a person not in the same protected class." *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015). With those elements in mind, the Court notes that, in the present case, no claimant was denied a position. The Court also notes that just because Texar hired the claimants does not mean that the decision was not discriminatory. A hiring decision may still be a discriminatory act if Texar hired a similarly qualified person outside the claimant's protected class at a higher grade or salary. *Id.* at 969. Further, the Court notes that the EEOC does not allege that Texar failed to hire the claimants. It claims that Texar steered less qualified Hispanic applicants into higher paying skilled positions and steered equally qualified African American applicants into lessor paying positions. Accordingly, the Court does not find it appropriate to apply the failure to hire elements to the facts of this case.

In *Smith*, a case with a similar claim as the EEOC's steering claim, the Eighth Circuit held

7

that the following elements of a *prima facie* case should apply:  "(1) that she is a member of a protected class; (2) that she was meeting her employer's legitimate job expectations; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently." *Id.* at 969 (quoting *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008)) (involving a disparate treatment claim based on discriminatory pay differentials where an African American employee claimed that his employer discriminated against him by hiring him at a lower salary and pay grade than a similarly situated white co-worker).  The Court will apply those elements to the present case when analyzing whether the EEOC has established a *prima facie* case of race discrimination.  The Eighth Circuit has described the EEOC's burden at the *prima facie* stage:

> The plaintiff's burden at the *prima facie* stage is not great; the plaintiff is required to present facts capable of supporting an inference of discrimination.  In attempting to present facts that would support such an inference, the test for whether employees are similarly situated is strict; the employees must be "similarly situated in all material respects."

*Id.* at 969-970 (cleaned up).

The EEOC argues that the claimants were "arguably" similarly situated to the Hispanic applicants in all relevant respects.  On the other hand, Texar argues that the Hispanic applicants had more experience operating the heavy machinery that Texar owns and operates and were better suited to handle this machinery than the African American applicants.

The EEOC's brief is not clear as to which specific Hispanic applicants it contends are similarly situated to the claimants and were hired into higher paying skilled operator positions.  However, the EEOC does identify a list of Hispanic applicants who failed to list their previous job experience on their applications and were hired into skilled operator or climber positions:  Martin Gaytan (bucket truck at $17.00 per hour); Armando Mancilla (climber/bucket truck at $18.00 per

8

hour); Rolando Mancilla (bucket truck operator at $15.00 per hour); Miguel Rodriguez (climber at $15.00 per hour); Franciso Vargas (bucket truck operator at $17.50 per hour); Limber Ponce (operator at $17.00 per hour); Javier Bautista Martinez (bucket truck operator at $18.00 per hour); and Ramon Ovalle (bucket operator at $18 per hour).

Texar points out that this list includes employees hired in different geographic regions. Further, Texar explains that McWilliams, a Texar foreman, knew Ponce from working with him at Asplundh and that Ponce worked with several of the Hispanic applicants who McWilliams hired as operators. Thus, McWilliams and Ponce had personal knowledge of the previous tree clearing industry experience of each Hispanic on the list that was hired as an equipment operator, even though this experience was not included in the applicant's application.

Willis had experience driving a forklift and SkyTrak, but he had no experience operating the heavy machinery that Texar owned and operated. Willis testified that he thought he could have been trained to become an operator. However, Willis admits in his deposition that when he was hired, he was not qualified to be an operator. After Willis was hired, he put the chainsaw chain on backwards the first fifteen times. Similarly, Carter also admits that he was not qualified at hire to be an operator.

Briscoe applied for a climber or bucket truck operator position at Texar. After a brief stint working previously at Texar, he was rehired in 2020 as a climber in the Texarkana area. Briscoe had experience working at Asplundh as a climber. In 2020, no bucket truck operators were hired in the Texarkana area because the Texarkana crew already had a bucket truck operator, Daniel Glover (African American).

Dudley contends that he should have been hired as a climber, bucket operator, or bush hog operator. On his application, he listed five years of experience in tree trimming and the word

9

"clime." Texar argues that it was not aware of Dudley's climbing experience because it was written illegibly on his application. The Court agrees that it is somewhat difficult to make out the word "clime" in the application. At hire, Dudley did not have experience operating a bucket truck or other heavy equipment that Texar owns and operates. Dudley did have experience operating a bush hog, but bush hog operator was not a position that existed at Texar.

Based on the facts in the summary judgment record, the Court cannot find that the EEOC has met its burden at the *prima facie* stage. Particularly, the EEOC has not shown how similarly situated Hispanic applicants were treated differently than the claimants. The EEOC has presented a list of comparators that does not list their previous job experience on their applications and were hired into operator and climber positions. The EEOC argues this evidence shows that Texar steered Hispanic individuals with no previous experience into more skilled positions where they received higher wage rates. However, the incomplete applications are not sworn statements, do not reflect the actual qualifications of the applicants, and do not prove a lack of work history. Thus, the incomplete applications fail to establish that the claimants and comparators are similarly situated in all relevant respects.

Texar explains that either McWilliams or Ponce had personal knowledge of the experience of each Hispanic hired as an equipment operator from the list of comparators. McWilliams testified that their experience and reliability made them more qualified than the claimants to be operators. The Court recognizes that the burden at the *prima facie* stage is not onerous, but the EEOC is required to present facts capable of supporting an inference of discrimination. They have not done so, especially given that the test for whether employees are similarly situated is strict, and the employees must be "similarly situated in all material respects." *Id.* Accordingly, the Court finds that the EEOC has failed to establish a *prima facie* case of race discrimination regarding their

steering claims.

### 2. Legitimate, Non-discriminatory Reason and Pretext

Assuming, *arguendo*, that the EEOC has made out a *prima facie* case, the Court must then determine whether Texar has offered a legitimate, non-discriminatory reason for its action. If Texar has done so, the burden shifts back to the EEOC to show that Texar's proffered reason was merely a pretext for discrimination.

"The burden to articulate a non[-]discriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence." *Torgerson*, 643 F.3d at 1047 (internal quotation omitted). Texar's burden "is one of production, not persuasion; it can involve no credibility assessment." *Twymon*, 462 F.3d at 935.

Here, Texar explains that it makes job placement decisions based on experience and geographical areas, which the Court finds is a legitimate non-discriminatory basis for the assignment of jobs. Because Texar has met its burden of articulating a non-discriminatory justification for its job assignments, the burden shifts back to the EEOC to show that this articulated reason is merely a pretext for discrimination. To prove pretext, the EEOC must both discredit Texar's asserted reason for its job assignments and show that the circumstances permit drawing the reasonable inference that, at hire, Texar steered less qualified Hispanic applicants into higher paying skilled operator positions and steered equally qualified African Americans applicants into lessor paying laborer positions. *See id.*

The EEOC briefly argues that Texar's proffered reason is a pretext for discrimination because Texar has offered shifting explanations for its general hiring practices. John Scoggins testified in his deposition that the starting positions are based on previous experience and whether an applicant can do the job or not. He explained that Texar has a range of pay for its various

11

positions and that the foremen determine the starting pay within that range. In a response to a request for admission, Texar stated that it verified an applicant's skills and experience during the interview by performing reference checks and job observation. However, Texar later changed this response and stated Texar only conducted reference checks "as necessary." Scoggins also testified that his general foremen had worked with many of the applicants previously and knew their experience. While the explanation as to the general hiring process may have changed, Texar has consistently maintained that it makes job placement decisions based on experience and geographic location. Texar's answers may have become more detailed as the litigation has progressed, but Texar has not changed its explanation as to why it placed any claimant or alleged comparator into a certain job position. Accordingly, the Court finds that the EEOC has failed to offer evidence to show that Texar's proffered reasons for its placement decisions are unworthy of credence. Further, the Court finds that the EEOC has offered no facts to create a reasonable inference that Texar steered less qualified applicants into higher paying skilled operator positions and steered equally qualified African American applicants into lessor paying laborer positions. Accordingly, the Court finds that Texar is entitled to summary judgment regarding the EEOC's position steering claims.

### B. Disparate Treatment Based on Starting Wage Rates

The EEOC asserts race-based wage discrimination claims on behalf of Willis, Carter, Dudley, Richardson, and Person. Absent direct evidence of discrimination, these claims are analyzed under the burden-shifting framework of *McDonnell Douglas*. *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (2012).

#### 1. *Prima Facie* Case

The EEOC argues that Texar paid African American laborers a starting wage less than Hispanic laborers for equal work. To establish a *prima facie* case of wage discrimination based

12

on race, the EEOC must show: (1) the claimants were members of a protected class; (2) they were meeting Texar's legitimate job expectations; (3) they suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Id.*

Texar hired Willis as a chip hand to work in Sulfur Springs, Texas, at $13.00 per hour. Prior to being hired at Texar, Willis worked in a bakery, at Tyson Foods, in landscaping, and making string trimmers. He also had experience driving a forklift and SkyTrak.

Texar hired Carter as a chip hand in Sulfur Springs, Texas, at $13.00 per hour. Carter previously worked at Tyson Foods and was trained on a SkyTrak but was not an operator. He also testified that he had some training on a bucket truck but was not an operator. He had previous experience operating a bush hog and farm tractor.

Texar hired Dudley as a chip hand in Hope, Arkansas, at $11.00 per hour. Dudley previously worked at a residential tree trimming business for five years.

Texar hired Richardson as a chip hand in Texarkana at $10.00 per hour. Richardson had no experience in the tree clearance industry and no experience operating heavy equipment. Prior to joining Texar, Richardson worked for about a month for a gas line company, worked as a telemarketer, and as a painter.

Texar hired Person as a chip hand in Sulphur Springs, Texas, at $11.00 per hour. Prior to joining Texar, Person had worked in a dairy factory. He had no prior experience in tree clearance and did not know how to operate a chainsaw when hired by Texar.

The EEOC notes that Texar started Hispanic applicants in Oklahoma at higher wages. Texar started R. Hernandez as a chip hand at $12.00 per hour. His previous experience was in construction. Texar hired Jesus Borja as a chip hand at $13.00 per hour, and his previous experience was a dishwasher. Texar hired Brayan Hernandez as a chip hand at $12.00 per hour,

and his previous experience was in automotive repair. Texar hired Mario Mendez as a chip hand at $12.00 per hour with previous experience in dishwashing, lawn service, and parking service. In sum, these Hispanic applicants in the Oklahoma area were hired at $12.00 to $13.00 per hour.

First, the Court notes that Willis and Carter were both paid a starting wage of $13.00 per hour, which equals the highest starting salary any of the identified Hispanic applicants were paid. Thus, the Court finds that Willis and Carter cannot establish a *prima facie* case of race discrimination because they have not shown that they suffered an adverse employment action, that is, that they were paid a starting wage that was less than the wages paid to Hispanic workers.

**2. Legitimate, Non-discriminatory Reason and Pretext**

Dudley, Richardson, and Person were paid a starting wage less than the Hispanic applicants in Oklahoma. However, even assuming that these claimants made a *prima facie* case of salary discrimination based on their race by identifying Hispanic applicants who received a higher starting wage, they cannot meet their burden of showing that Texar's explanation for their compensation was pretext for discrimination.

Texar explains that it makes starting wage decisions based on experience and geographical areas, which the Court finds is a legitimate non-discriminatory basis for determining starting wages. Because Texar has met its burden of articulating a non-discriminatory justification for determining starting wages, the burden shifts back to the EEOC to show that this articulated reason is merely a pretext for discrimination.

The EEOC contends that the starting wages paid to the Hispanic applicants is evidence of pretext. However, the EEOC has the burden of proving that these Hispanic applicants were similarly situated in all relevant respects, which is a rigorous standard. *Onyiah*, 684 F.3d at 717. Neither Dudley, Richardson, nor Person was hired for the Oklahoma region. Texar explains that

to recruit employees into the Oklahoma jobs, Texar typically offered higher starting wages because jobs regularly required the employees to stay overnight, away from home. Thus, Hispanic laborers hired in Oklahoma are not proper comparators as they are not similarly situated to the African American laborers hired in other geographic regions.

The EEOC fails to offer any evidence that discredits Texar's asserted reason for its starting wage determinations. Further, the EEOC fails to offer any facts that create a reasonable inference that Texar paid the claimants a lower starting wage because of their race. Accordingly, the Court finds that Texar is entitled to summary judgment regarding the EEOC's race-based wage discrimination claims.

## IV.  CONCLUSION

For the reasons stated above, the Court finds that Texar's Motion for Summary Judgment (ECF No. 27) should be and hereby is **GRANTED**, and the EEOC's claims are **DISMISSED WITH PREJUDICE**. The Court will issue a separate judgment.

**IT IS SO ORDERED**, this 29th day of September, 2023.

>           /s/ Susan O. Hickey
>           Susan O. Hickey
>           Chief United States District Judge